**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JIAFU LIU, *et al.*, | |
| Plaintiffs, | Civil Action No. 24-8713 (MAS) (TJB) |
| v. | **MEMORANDUM OPINION** |
| ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL INC., *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Robert Wood Johnson University Hospital New Brunswick and RWJBarnabas Health (collectively "RWJ Defendants"),[1] Gary Ben Cornick ("Cornick"), Benjamin Menasha ("Benjamin") and Pisciotta & Menasha, LLC (collectively "Menasha Defendants"), and Edison Healthcare LLC's ("Embassy Manor"), (collectively, the "Moving Defendants"), respective Motions to Dismiss (ECF Nos. 21, 25, 26, 30) Plaintiffs Jiafu Liu ("Liu") and Lingxi Kong's ("Kong") (collectively, "Plaintiffs") Amended Complaint (ECF No. 4). Plaintiffs opposed (ECF Nos. 44-49), and the Moving Defendants replied (ECF Nos. 53-56). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motions to Dismiss are granted in part and denied in part.

---

[1] The RWJ Defendants' notice of motion explains that Robert Wood Johnson University Hospital New Brunswick was incorrectly pled in the Amended Complaint as Robert Wood Johnson University Hospital Inc. (ECF No. 21.)

## I.    BACKGROUND[2]

### A.    Factual Background

Liu is an eighty-two-year-old,[3] non-English speaker (Am. Compl. ¶¶ 1, 19, 33, 93, 107, ECF No. 4), who resides in Flushing, New York (*id.* ¶ 7), with Xiang Wu ("Wu"), a roommate (*id.* ¶ 59). Liu was married for fifty-two years until his divorce in June 2024. (*See id.* ¶¶ 41, 43.) Kong is a prospective law student (*id.* ¶ 23), and purports to be Liu's legal representative, through durable powers of attorney (*id.* ¶¶ 8, 23, 40, 55, 61).

The thrust of Plaintiffs' claims stem from the people involved and the events that occurred surrounding Liu's stay at: (1) Robert Wood Johnson University Hospital (the "Hospital") (*id.* ¶ 30); and (2) Embassy Manor (*id.* ¶ 49).

### 1.    The Hospital

In April 2024, following an eviction from his residence in Kendall Park, New Jersey (*id.* ¶ 25), Liu was admitted to the Hospital, where he remained for over two months (*see id.* ¶¶ 27, 30, 49). Three days after his admission, Liu was placed in the Intensive Care Unit ("ICU"), where he came under strict surveillance and was prohibited from leaving.[4] (*Id.* ¶ 27.) When Liu tried to leave the Hospital to meet his then-wife and his daughter, the Hospital prohibited him from leaving his room. (*Id.* ¶ 39.) Throughout his stay at the Hospital, Liu also shared a room with other patients

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[3] The Court notes that Liu was eighty-two at the time the Amended Complaint was filed. (Am. Compl. ¶ 1.)

[4] It is unclear whether Liu stayed at the Hospital as an inpatient in the general ward or whether he remained in the ICU for his entire stay at the Hospital. (*See id.* ¶¶ 30, 49.)

who constantly made noise, which prevented Liu from getting rest and sleep. (*Id.* ¶ 30.) When Liu complained to the Hospital, it provided him with a pair of earplugs. (*Id.*)

During Liu's stay at the Hospital, Yehudit, a social worker at the Hospital, and Benjamin, an attorney who had been court-appointed to represent Liu in a guardianship proceeding, visited Liu several times. (*Id.* ¶¶ 14, 32.) On one visit, Benjamin told Liu that his daughter gave up her guardianship rights and tried to have Liu sign a document that would grant Benjamin guardianship over him.[5] (*Id.* ¶ 32.) Liu refused, and Benjamin responded that he could still obtain Liu's signature by copying Liu's previous signatures. (*Id.*) When Benjamin visited Liu again, Benjamin intimidated Liu by staring at him, from a close distance, for three minutes, which made Liu uncomfortable. (*Id.* ¶ 35.)

On June 10, 2024, RWJBarnabas Health commenced a guardianship proceeding against Liu. (*Id.* ¶¶ 33-34.) Plaintiffs allege that the Hospital falsely stated to the court overseeing the guardianship proceeding that Liu's daughter had a restraining order against him and provided Liu's phone number as his daughter's contact information. (*Id.* ¶ 33.) The next day, Yehudit presented Liu with thirty-two pages of legal documents from the guardianship proceeding without translations or an explanation of their contents. (*Id.* ¶ 34.)

A few days later, Yehudit visited Liu to obtain his signature and presented him with an additional legal document, related to Liu's divorce (*id.* ¶ 41, 43), which had already been allegedly fraudulently notarized and stamped by a notary, Xiuping Yang (*id.* ¶¶ 16, 41). Even though Liu believed that the Hospital coerced Liu's then-wife to agree to a divorce under false pretenses (*id.* ¶ 33), Liu reluctantly signed the divorce papers (*id.* ¶ 43-44).

---

[5] Although it is unclear who had guardianship over Liu on June 8, 2024, the Court presumes that Liu's daughter may have been his guardian. (*See id.* ¶¶ 32-33.)

### 2.    *Embassy Manor*

On July 11, 2024, the Hospital transferred Liu to Embassy Manor. (*Id.* ¶ 49.) While Embassy Manor allows patients to move freely and to go in and out of their rooms to exercise and get sunlight, it did not allow Liu to leave his two-person room (*id.* ¶ 50) because the Hospital had told Embassy Manor that Liu showed signs of attempts to escape at the Hospital (*id.* ¶ 51).

On August 7, 2024, Benjamin, calling from the law firm Pisciotta & Menasha LLC, threatened Kong in a "highly condescending tone" and stated that even if Kong does not cooperate, Liu's guardianship proceeding will go through on August 23, 2024. (*Id.* ¶ 52.) Following this phone call, Kong planned to take Liu out of Embassy Manor. (*See id.*)

Three days later, Kong carried out his plan. (*Id.* ¶ 53.) He went to Embassy Manor and informed its staff that he intended to take Liu out for a few days and would return to complete discharge procedures. (*Id.*) Kong, however, took Liu away—while security was "not vigilant"—and did not return until August 23, 2024, when Embassy Manor reached out to Kong to come and retrieve Liu's personal items. (*See id.* ¶¶ 53, 62.) After realizing Liu's absence, Embassy Manor, along with Cornick (Liu's court-appointed temporary guardian), Benjamin, and Aristacare at Whiting, LLC ("Aristacare"), made numerous phone calls and sent text messages to Changhe Cheng ("Cheng"), Liu's friend who is a retired lawyer (*id.* ¶ 40), demanding Liu's return to Embassy Manor (*see id.* ¶ 58).

On August 23, 2024, Plaintiffs, accompanied by Cheng and Wu, appeared before Judge Roger Daley in Middlesex County Superior Court for Liu's guardianship proceeding. (*Id.* ¶ 59.) During the recess of that proceeding, Plaintiffs, after receiving a phone call from Embassy Manor, went to Embassy Manor to collect Liu's personal items. (*Id.* ¶ 62.)

At Embassy Manor, seconds after Liu signed the release form which stated that he was moving out of the facility against Embassy Manor's physicians' recommendations, Embassy Manor staff prevented Plaintiffs from leaving. (*Id.* ¶ 63.) Although Kong informed the Embassy Manor staff that Plaintiffs were being falsely imprisoned, the staff claimed to have guardianship over Liu (*id.* ¶ 65), and locked the exit doors (*id* ¶ 64). When Plaintiffs continued to try to leave, four Embassy Manor personnel physically attacked Kong, slammed him to the ground multiple times, and restrained him with a knee-on-neck method. (*See id.* ¶ 65.) Kong was also kicked in the head and eyes. (*Id.*) Cheng and Wu witnessed these events. (*Id.* ¶ 66.) Once police arrived at Embassy Manor, they arrested Kong and continued to detain Liu. (*Id.* ¶ 67.) Upon Cheng's "repeated warnings," however, the police eventually allowed Liu to leave. (*Id.*)

### B.    Procedural History

On August 23, 2024, Plaintiffs commenced this action. (ECF No. 1.) A month later, Plaintiffs amended the Complaint, adding parties[6] and alleging various causes of action. (*See generally* Am. Compl.) Plaintiffs allege a total of fourteen causes of action: (1) Violation of Civil Rights under 42 U.S.C. § 1983 against all Defendants except Xiuping Yang ("Count One"); (2) Violation of the Americans with Disabilities Act against all Defendants except Xiuping Yang ("Count Two"); (3) Elder Abuse against all Defendants except Xiuping Yang ("Count Three"); (4) Fraudulent Misrepresentation against all Defendants except Xiuping Yang ("Count Four"); (5) False Imprisonment against the RWJ Defendants, Embassy Manor, and Aristacare ("Count Five"); (6) Intentional Infliction of Emotional Distress against all Defendants except Xiuping

---

[6] The initial Complaint named five Defendants: (1) Robert Wood Johnson University Hospital Inc.; (2) RWJBarnabas Health; (3) Edison Healthcare LLC; (4) Aristacare; and (5) Pisciotta & Menasha LLC. (Compl. ¶¶ 8-12, ECF No. 1.) The Amended Complaint added three new Defendants: (6) Benjamin Menasha; (7) Gary Ben Cornick; and (8) Xiuping Yang. (Am. Compl. ¶¶ 14-16.)

Yang ("Count Six"); (7) Abuse of Process against all Defendants except Xiuping Yang ("Count Seven"); (8) Assault and Battery against Embassy Manor and Aristacare ("Count Eight"); (9) Civil Conspiracy against all Defendants except Xiuping Yang ("Count Nine"); (10) Gross Negligence against all Defendants except Xiuping Yang ("Count Ten"); (11) Breach of Fiduciary Duty against the RWJ Defendants, Embassy Manor, and Aristacare ("Count Eleven"); (12) Vicarious Liability against Pisciotta & Menasha LLC ("Count Twelve"); (13) Breach of Fiduciary Duty against Benjamin and Cornick ("Count Thirteen"); and (14) Notarial Misconduct and Fraud against Xiuping Yang ("Count Fourteen").[7] (*See id.* ¶¶ 72, 76-223.)

Aristacare answered (ECF No. 23), while the RWJ Defendants, Cornick, the Menasha Defendants, and Embassy Manor, respectively, moved to dismiss. (*See* Defs.' Moving Brs., ECF Nos. 21, 25-2, 26-1, 30.) Plaintiffs opposed (Pls.' Opp'n Brs., ECF Nos. 44-49), and RWJ Defendants, Cornick, Menasha Defendants, and Embassy Manor respectively replied (Defs.' Reply Brs., ECF Nos. 53-56).

## II.   **LEGAL STANDARD**

### A.   **Motion to Dismiss—Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2)[8] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

---

[7] On November 14, 2024, the parties stipulated to dismiss Defendant Xiuping Yang with prejudice. (*See* ECF No. 27.)

[8] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.    Motion to Dismiss—Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a matter for want of standing "because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages, Inc.*, 926 F.2d at 1409. A motion to dismiss for lack of subject matter jurisdiction may either "attack the complaint on its face . . . [or] attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

A facial challenge asserts that "the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." *Iwanowa v. Ford Motor Co.*, 67 F. Supp. 2d 424, 438 (D.N.J. 1999). As such, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). District courts considering a facial challenge, then, must construe the allegations in the complaint as true and determine whether subject matter jurisdiction exists. *Mortensen*, 549 F.2d at 891; *see also Cardio-Med. Assocs. Ltd. v. Crozer-Chester Med. Ctr.*, 721 F.2d 68, 75 (3d Cir. 1983). "Thus, '[t]o survive a motion to dismiss [for lack of standing], a complaint must contain sufficient factual matter' that would establish standing if accepted as true." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

In matters where a plaintiff proceeds pro se, district courts are required to construe the complaint liberally. *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 32 (3d Cir. 2011). "Yet there are limits to [district courts'] procedural flexibility" and "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

## III.   DISCUSSION

### A.    Improper Legal Representation

The RWJ Defendants and the Menasha Defendants have both raised the issue of improper representation and Kong's lack of standing in their respective moving briefs. (*See* RWJ Defs.'

Moving Br. *36-37,[9] ECF No. 21; Menasha Defs.' Moving Br. 1 ECF No. 55.) Specifically, they argue that Kong is not a licensed attorney and therefore, he may not bring an action on Liu's behalf. (RWJ-Defs.' Moving Br. *36-37; Menasha Defs.' Moving Br. 1.)

"Although an individual may represent herself or himself pro se, a non-attorney may not represent other parties in federal court." *Murray v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018) (citing *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998)). In general, courts in this district describe the rule prohibiting non-lawyer litigants from representing another individual pro se as an issue of standing. *See Martin v. Piserchia*, No. 23-21669, 2024 WL 3812071, at *6 (D.N.J. Aug. 14, 2024) (citing *Jackson v. Bolandi*, No. 18-17484, 2020 WL 255974, at *5 (D.N.J. Jan. 17, 2020)); *see also Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting that standing doctrine generally prohibits a litigant from raising another person's legal rights); *Mariana v. Fisher*, 338 F.3d 189, 205 (3d Cir. 2003) ("[S]tanding requires that a litigant asserts his or her own legal interests rather than those of a third party."). Because such issues are issues of standing, the Court may address this issue sua sponte. *See Eastampton Ctr., L.L.C. v. Township of Eastampton*, 155 F. Supp. 2d 102, 112 (D.N.J. 2001) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). As such, the Court addresses the issue of improper representation first. *See Williams v. United States*, 477 F. App'x 9, 11 (3d Cir. 2012) (explaining that the district court "should not have reached the merits of [the claim] in the absence of proper representation" (citing *Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 883 (3d Cir. 1991)).

Here, the Amended Complaint consistently describes Liu as a non-English speaker. (Am. Compl. ¶¶ 1, 19, 33, 93, 107.) In Count Three of the Amended Complaint, even Plaintiffs'

---

[9] Page numbers within a record cite that are preceded by an asterisk refer to the page numbers within the ECF header.

allegation is based, in part, on the fact that Defendants knew Liu's status as a non-English speaker. (*Id.* ¶ 107 ("Defendants knew or should have known that their conduct was likely to cause harm to Plaintiff Liu, given his . . . non-English-speaking status.").) The Amended Complaint further characterizes Liu as incapable of understanding a phone call in English (*see id.* ¶ 33 ("Liu had heard someone calling for his daughter on the phone, *but not understanding English*, he had no choice but to hang up.") (emphasis added)), let alone capable of drafting the sixty-four-page Amended Complaint. Because the Court reasonably presumes that Liu is incapable of drafting the Amended Complaint in English given the repeated representations that he is a non-English speaker, the Court is concerned that Kong is acting as Liu's legal representative. The Amended Complaint in fact states as much. (*Id.* ¶ 8 ("Kong . . . serves as Plaintiff Liu's legal representative through Durable Power of Attorney,")); *see Pinkney v. City of Jersey City Dep't of Hous. & Econ. Dev.*, 42 F. App'x 535, 537 (3d Cir. 2002) (finding that even if a non-attorney is a proper representative with a power of attorney, the non-attorney cannot act as counsel for another).

Kong may proceed pro se to prosecute his own claims, and he may represent Liu if he is a licensed attorney. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel."). But he is not. (Am. Compl. ¶ 23 ("Plaintiff Lingxi Kong[] [is] a prospective law student.").)

Under the Third Circuit's well-established principle, Kong—as a non-attorney proceeding pro se—may not bring claims on Liu's behalf. *Collinsgru*, 161 F.3d at 232 ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007); *Osei-Afriyie*, 937 F.2d at 882 (holding that a non-lawyer appearing pro se was not entitled to play the role of attorney in federal court). Because Kong, as a non-attorney, purports to

represent Liu (*see* Am. Compl. ¶¶ 8, 61), the Court dismisses without prejudice Liu's claims for lack of standing. *See Johnsrud v. Carter*, 620 F.2d 29, 32-33 (3d Cir. 1980) (explaining that dismissal on jurisdictional grounds and for failure to state a claim are analytically distinct as the former involves the right to be heard whereas the latter, if sustained without leave to plead further, is a disposition on the merits).

Because the Court finds that Liu has proceeded with improper representation, the Court shall not address the merits of Liu's claims until the issue of representation is resolved. *See Williams*, 477 F. App'x at 11 ("The District Court [] should not have reached the merits of [the] claim in the absence of proper representation."); *Pinkney*, 42 F. App'x at 537 (vacating district court's judgment on the merits and remanding for further proceedings on the issue of who can properly represent the party in interest because plaintiff, a non-attorney, sought to represent an allegedly incompetent adult). The Court, accordingly, dismisses the Amended Complaint as it pertains to Liu.

But the Court's inquiry does not end there. "A district court must invoke Rule 17 *sua sponte* and consider whether to appoint a representative for an incompetent person when there is 'verifiable evidence of incompetence.'" *Mondelli v. Berkeley Heights Nursing & Rehab. Ctr.*, 1 F.4th 145, 149 (3d Cir. 2021) (quoting *Powell v. Symons*, 680 F.3d 301, 307 (3d Cir. 2012)).

> Verifiable evidence of incompetence includes (1) "evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent," or (2) "evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent."

*Id.* (quoting *Powell*, 680 F.3d at 307). Here, the Court has been presented with "verifiable evidence of incompetence" as to Liu. Specifically, Embassy Manor argues that Liu is unable to maintain a lawsuit because he is incapacitated and directs the Court to Docket No. 287146 in the Superior

Court of New Jersey Chancery Division – Probate Part in Middlesex County (the "State Court Action"). (Embassy Manor's Moving Br. 3, ECF No. 30.) A review of the order attached to Embassy Manor's brief[10] reveals that the state court gave Liu court-appointed counsel and a court-appointed guardian for a hearing to determine whether Liu was incapacitated, which was held on August 23, 2024. (*See* Embassy Manor's Moving Br., Ex. C, ECF No. 30-2.) To date, the Court has not been presented with the final outcome of that hearing.

A district court "must appoint a guardian ad litem—or issue another appropriate order—to protect . . . [an] incompetent person who is unrepresented in an action."[11] Fed. R. Civ. P. 17(c)(2). Here, while the Court has not yet been presented with the final outcome of Liu's state court incompetency hearing, it finds that there is sufficient evidence at this time to warrant appointment of a guardian ad litem to Liu for the limited purpose of this case. *See Powell*, 680 F.3d at 303 ("The decision to appoint a next friend or guardian ad litem rests with the sound discretion of the district court.").

### B.    Kong's Claims (Counts One, Five, Six, Eight, and Ten).

Having dismissed Liu due to Kong's improper representation, the Court examines Kong's own claims in the Amended Complaint, as Kong is entitled to represent himself pro se. *See* 28 U.S.C. § 1654. Kong brings Counts One, Five, Six, Eight, and Ten on his own behalf—the

---

[10] The Court may take judicial notice of such state court documents on a motion to dismiss. *See Guidotti v. Legal Helpers Debt Resol.*, 716 F.3d 764, 772 (3d Cir. 2013) (noting that the Court may "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010))).

[11] Here, Liu is unrepresented in this action because even though Liu is deemed incompetent, Kong still cannot properly represent Liu. *See Bush v. Goodall*, 732 F. App'x 135, 137 (3d Cir. 2018) (finding that even if an incompetent person has a next friend that represents him, the incompetent person must be represented by the next friend *with an attorney* because it is not in the interest of elderly incapacitated persons that they be represented by non-attorneys).

remaining claims are brought on Liu's behalf only. (*See* Am. Compl. ¶¶ 80-81, 130-34, 137-40, 157-63, 175-78.) The Court addresses each claim in turn.

### 1.    42 U.S.C. § 1983 (Count One)

Kong brings Count One against all Moving Defendants. In Count One, the allegations related to Kong are that Embassy Manor violated his Fourth Amendment rights "by physically restraining him and preventing him from leaving Embassy Manor on August 23, 2024, without legal justification or consent." (Am. Compl. ¶ 80(b).) Any allegations as to the RWJ Defendants, Cornick, and the Menasha Defendants pertain to Liu only, and so the Court finds that Kong fails to adequately plead any facts to support allegations concerning Count One against the RWJ Defendants, Cornick, and the Menasha Defendants, let alone a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). As such, the Court dismisses Count One against the RWJ Defendants, Cornick, and the Menasha Defendants.

The Court, therefore, analyzes Count One as against Embassy Manor only. In moving to dismiss, Embassy Manor argues that Kong's § 1983 claim must be dismissed because he has failed to sufficiently plead that Embassy Manor is a state actor. (Embassy Manor's Moving Br. at 9, ECF No. 30.)

The Third Circuit has found a private party liable under § 1983 when a "symbiotic relationship" exists between the private party and the state. *Reitz v. County of Bucks*, 125 F.3d 139, 147 (3d Cir. 1997) (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). If facts support a finding that a private party acted as a joint participant in the challenged activity with the state, then the private party can be found to have acted under color of state law and be liable under § 1983. *Id.* at 148. "While the exact contours of this state action inquiry are difficult to delineate, the interdependence between the state and private actor must be pronounced before the law will

13

transform the private actor into a state actor." *Groman v. Township of Manalapan*, 47 F.3d 628, 641 (3d Cir. 1995).

Here, Kong fails to allege sufficient facts to adequately plead a symbiotic relationship or an interdependence between Embassy Manor, a private party, and a state actor. Kong contends that "Defendants engaged in joint activity with state officials by coordinating with social services, utilizing state procedures to initiate guardianship proceedings, and accepting court appointments." (Am. Compl. ¶ 83; *see also id.* ¶ 79 ("[Embassy Manor] . . . perform[ed] a public function and cooperat[ed] with state authorities.").) But Kong fails to describe which or how state officials jointly participated with Embassy Manor to unlawfully seize him. *See McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994) ("State action may be found if the private party has acted *with the help of or in concert with* state officials." (emphasis added)).

Even if Kong had alleged, for example, that Embassy Manor's security personnel cooperated with police officers to unlawfully seize him, Kong would need to plead facts to demonstrate sufficient cooperation beyond the officers having arrived after the security personnel's seizure. *See Hickson v. Marina Assocs.*, 743 F. Supp. 2d 362, 375 (D.N.J. 2010) (finding casino security personnel who detained a plaintiff-patron were mere private actors even though they waited for the police officer to arrive and make an arrest). Given that Kong failed to plead a relationship between Embassy Manor and a state authority, or other connection sufficient to demonstrate that Embassy Manor acted under color of state law, the Court dismisses Kong's § 1983 claim against Embassy Manor. *See Groman*, 47 F.3d at 642 (finding a private party did not act under color of state law where there was no evidence that it had its professional decisions dictated or guided by the state, despite receiving state funding).

### 2.    *False Imprisonment (Count Five)*

Kong brings Count Five against the RWJ Defendants, Embassy Manor, and Aristacare.[12] In Count Five, the allegations related to Kong are that "[o]n August 23, 2024, Defendants also falsely imprisoned [ ] Liu and Kong when they attempted to leave Embassy Manor after collecting . . . Liu's belongings. Defendants locked the doors and physically prevented them from leaving, effectively restraining them against their will without any legal justification." (Am. Compl. ¶ 130.) Any allegations concerning the RWJ Defendants pertain to Liu only, and so the Court finds that Kong fails to adequately plead any facts to support allegations concerning Count Five against the RWJ Defendants, let alone a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). As such, the Court dismisses Count Five against the RWJ Defendants.

The Court, therefore, analyzes Count Five as against Embassy Manor only. Under New Jersey law, the tort of false imprisonment requires: (1) "an arrest or detention of the person against his or her will[;]" and (2) "lack of proper legal authority or legal justification." *Hickox v. Christie*, 205 F. Supp. 3d 579, 603-04 (D.N.J. 2016) (quoting *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1117 (N.J. 2009)). Kong has sufficiently pleaded facts to meet both elements of his false imprisonment claim because he pleaded that Embassy Manor physically prevented him from leaving against his will without legal justification. (Am. Compl. ¶ 130.)

Embassy Manor does not deny preventing Kong from leaving. (*See* Embassy Manor's Moving Br. at 13-14.) It only argues that it had a legal justification to prevent Plaintiffs from leaving because Liu was legally incapacitated and subsequently appointed a guardian who authorized Liu's transfer to Embassy Manor, which then admitted him to the facility. (*See id.*) But

---

[12] Since Aristacare has not moved to dismiss, the Court does not address claims against it. (*See* ECF No. 23.)

Embassy Manor provides no independent justification for preventing Kong from leaving. (*Id.* at 14 ("Kong's claim of false imprisonment . . . also fails for the same reason."); Am. Compl. ¶ 133 ("For [] Kong, no justification exist[ed] for his detention . . . , as he was not a patient and was lawfully present to assist [] Liu.").) Because the Amended Complaint adequately pleads that Embassy Manor had no legal justification for preventing Kong from leaving, the Court finds that Kong's false imprisonment claim survives Embassy Manor's Motion to Dismiss. *See Verano v. County of Essex*, No. 16-6388, 2017 WL 3086224, at *4 (D.N.J. July 20, 2017) (finding that a plaintiff adequately set forth a false imprisonment claim because the plaintiff's detention was "based on no legal process or justification").

### 3.    *Intentional Infliction of Emotional Distress (Count Six)*

Kong brings Count Six against each Moving Defendant.[13] In Count Six, the allegations related to Kong are that Embassy Manor acted intentionally and recklessly by "[p]hysically assaulting [ ] Kong . . . causing injury and trauma." (Am. Compl. ¶ 137(g).) Kong further pleads that he "suffered severe emotional distress, including fear, anxiety, and trauma from witnessing and experiencing physical violence." (*Id.* ¶ 140(b).) As an initial matter, Kong fails to adequately plead any facts to support allegations concerning Count Six against the RWJ Defendants, Cornick, or the Menasha Defendants, let alone a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). As such, the Court dismisses Count Six against the RWJ Defendants, Cornick, and the Menasha Defendants.

---

[13] Since Aristacare has not moved to dismiss, the Court does not address claims against it. (*See* ECF No. 23.)

The Court, therefore, analyzes Count Six as against Embassy Manor only. Embassy Manor argues for dismissal, contending that Kong failed to plead: (1) outrageous conduct; and (2) an actual severe and disabling emotional or mental condition. (*See* Embassy Manor's Moving Br. 15.)

Under New Jersey law, to adequately plead a common law cause of action for intentional infliction of emotional distress ("IIED"), a plaintiff must allege "intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Perry v. Gold & Laine, P.C.*, 371 F. Supp. 2d 622, 627 (D.N.J. 2005) (quoting *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)) (citation modified). Liability does not extend under a claim of IIED "to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Taylor v. Metzger*, 706 A.2d 685, 694 (N.J. 1998) (citation omitted). "The limited scope of this tort tolerates many kinds of unjust, unfair[,] and unkind conduct." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 956 (D.N.J. 1991) (citation omitted). Notwithstanding this standard, "[a]n intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss." *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006).

Here, Kong goes beyond alleging trivialities and pleads facts sufficient to establish an IIED claim. Kong bases his IIED claim on the physical assault he endured on August 23, 2024. (*See* Am. Compl. ¶ 137(g).) He pleads that Embassy Manor's personnel physically attacked him, "slamming him to the ground multiple times." (*Id.* ¶ 65.) They used "excessive force, including a knee-to-neck restraint method, and kicked [Kong's] head and eyes, resulting in injuries and mental trauma." (*Id.*) While the outrageous element of an IIED claim is an elevated threshold, the Court finds the pleaded facts sufficiently demonstrate, at this stage, that Embassy Manor's personnel's conduct was outrageous. *Cf. Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1195-96 (N.J. Super. Ct. App. Div. 2011) (surveying New Jersey state cases in which courts have found plaintiffs

to have met the elevated threshold of outrageous conduct, even though those plaintiffs suffered only verbal insults). The Court similarly finds that Kong sufficiently pleads emotional "distress that is severe," *Perry*, 371 F. Supp. 2d at 627, as Kong alleges that he "suffered severe emotional distress, including fear, anxiety, and trauma from witnessing and experiencing physical violence." (Am. Compl. ¶ 140(b)); *see also Bishop v. Okidata, Inc.*, 864 F. Supp. 416, 428 (D.N.J. 1994) (denying motion to dismiss because the court could not resolve inquiries concerning whether, inter alia, emotional distress was severe based on the pleadings alone). The Court, therefore, finds that Kong's IIED claim also survives Embassy Manor's Motion to Dismiss.

### 4.    *Assault and Battery (Count Eight)*

Kong brings Count Eight against Embassy Manor and Aristacare. [14] (Am. Compl. ¶¶ 157-63.) As to assault, Embassy Manor argues that Kong has "failed to plead the 'apprehension' requirement."[15] (Embassy Manor's Moving Br. 18.) As to battery, Embassy Manor argues that Kong "merely regurgitate[s] the elements of the cause of action." (*Id.* at 19.)

In New Jersey, common-law assault requires: "(1) an action intending to cause a harmful or offensive contact or place a person in imminent apprehension of such contact; and (2) the person is placed in imminent apprehension." *Bernard v. Cosby*, 648 F. Supp. 3d 558, 574 (D.N.J. 2023) (citing *Leang*, 969 A.2d at 1117). Battery is premised "upon a nonconsensual touching." *Id.*

Imminent apprehension requires that a person "must believe that the act may result in imminent contact unless prevented . . . by the other's self-defensive action or by his flight or by

---

[14] Since Aristacare has not moved to dismiss, the Court does not address claims against it. (*See* ECF No. 23.)

[15] The Court notes that Embassy Manor does not cite any cases to support its argument and includes only a single sentence in reply. (*See* Edison Healthcare's Reply Br. 3, ECF No. 54 ("Plaintiff Kong's Intentional Tort Allegations are Deficient as Pleaded.").)

the intervention of some outside force." *Ruiz v. N.J. Dep't of Corr.*, No. 15-3304, 2020 WL 1130210, at *7 (D.N.J. Mar. 9, 2020) (quotation omitted).

Regarding apprehension, Kong alleges in the Amended Complaint that:

> Defendants' agents approached [] Kong in an aggressive and threatening manner, demonstrating intent to cause imminent apprehension of harmful contact. This intention is evidenced by their sudden decision to prevent Plaintiffs from leaving Embassy Manor after all necessary procedures had been completed, locking the doors, and physically blocking their exit. [] Kong was placed in imminent apprehension of harmful contact, satisfying the elements of assault.

(Am. Compl. ¶ 159.) Here, Kong adequately pleads an assault claim because he alleges that the Embassy Manor staff "approached [him] in an aggressive and threatening manner." (*Id.*) While "the apprehension must be one which would normally be aroused in the mind of a reasonable person," *Wierzbicki v. City of Jersey City*, No. 19-17721, 2021 WL 4148105, at *9 (D.N.J. Sept. 10, 2021), approaching someone threateningly is sufficient at the motion to dismiss stage to adequately plead intent to cause imminent apprehension of harmful conduct. *See Buvel v. Bristol Myers Squibb Co.*, No. 22-6449, 2024 WL 3824025, at *3 (D.N.J. Aug. 15, 2024) ("[A]ngrily or rudely threatening someone, so as to put them in fear of bodily harm, could constitute assault." (citing *Wigginton v. Servidio*, 734 A.2d 798, 805 (N.J. Super. Ct. App. Div. 1999)).

Kong also adequately pleads a battery claim because he alleges nonconsensual touching resulting from being "physically attacked . . . , [and] slamm[ed] [] to the ground multiple times." (Am. Compl. ¶ 65); *Bernard*, 648 F. Supp. 3d at 574 (finding plaintiff's factual assertions sufficient to support a battery and an assault claim where plaintiff pleaded that defendant physically undressed her); *cf. Wierzbicki*, 2021 WL 4148105, at *10 (dismissing a plaintiff's battery claim because the plaintiff did not allege any touching). The Court, therefore, finds that Kong's factual

assertions—which are to be accepted as true at this stage—are sufficient to support his assault and battery claims against Embassy Manor.

### 5.    *Gross Negligence (Count Ten)*

Kong brings Count Ten against all Moving Defendants. (Am. Compl. ¶¶ 175-82.)[16] In Count Ten, the allegations related to Kong are that Embassy Manor failed "to protect [] Kong from physical assault on August 23, 2024, and allow[ed] or direct[ed] security personnel to use excessive force against him, resulting in physical injuries." (Am. Compl. ¶ 178(g).) Kong alleges that Embassy Manor owed a duty of care to him as Liu's legal representative, which it breached through grossly negligent acts. (*See id.* ¶¶ 177-78.) As an initial matter, Kong fails to adequately plead any facts to support allegations concerning Count Ten against the RWJ Defendants, Cornick, or the Menasha Defendants, let alone a "plausible claim for relief." *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). As such, the Court dismisses Count Ten against the RWJ Defendants, Cornick, and the Menasha Defendants.

The Court, therefore, analyzes Count Ten as against Embassy Manor only. Embassy Manor argues for dismissal because Kong has failed to demonstrate what duty it owed him. (*See* Embassy Manor's Moving Br. 19.) The Court disagrees.

Under New Jersey law, a negligence claim requires a plaintiff to establish: "(1) a duty of care[;] (2) a breach of that duty[;] (3) proximate cause[;] and (4) actual damages." *Doe v. Small*, 654 F. Supp. 3d 376, 395 (D.N.J. 2023) (quoting *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015)). "Gross negligence has the same elements as ordinary negligence because negligence differs from gross negligence only in degree, not in kind." *Id.* (quoting *Zelnick v. Morristown-Beard Sch.*, 137

---

[16] Since Aristacare has not moved to dismiss, the Court does not address claims against it. (*See* ECF No. 23.)

A.3d 560, 567 (N.J. Super. Ct. Law Div. 2015)) (citation modified). The New Jersey Supreme Court defines gross negligence as "an indifference to another by failing to exercise even scant care or by thoughtless disregard of the consequences that may follow from an act or omission." *Steinberg v. Sahara Sam's Oasis, LLC*, 142 A.3d 742, 754 (N.J. 2016).

"Whether a duty of care exists is a question of law that must be decided by the court." *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007). "A business owner owes a duty of care to patrons invited onto the business's premises—a duty 'to take reasonable precautions to prevent the occurrence of foreseeable harm' to those patrons." *Steinberg*, 142 A.3d at 754 (quoting *Weinberg v. Dinger*, 524 A.2d 366, 374 (N.J. 1987)).

In this case, liberally construing Kong's pro se Amended Complaint, the Court finds that Kong has sufficiently alleged that Embassy Manor owed him a duty of care. As Embassy Manor highlights, Kong does not explain what duty of care it owed him. (*See* Embassy Manor's Moving Br. 19; Am. Compl. ¶ 177.) Kong does allege, however, that "Defendants owed a duty of care to . . . Kong," (Am. Compl. ¶ 177), and specifies that Embassy Manor breached that duty of care by failing "to protect [] Kong from physical assault on August 23, 2024, and allowing or directing security personnel to use excessive force against him, resulting in physical injuries." (*Id.* ¶ 178(g).)

Importantly, Embassy Manor expected Kong to be at its facility. It was the first to inquire when it could expect Liu to come to its facility to retrieve his belongings, to which "Kong received the [call] and informed [Embassy Manor] that [Plaintiffs] would arrive in an hour." (*Id.* ¶ 62.) In essence, Embassy Manor expected Kong to be at its facility with Liu to retrieve Liu's belongings. As a business owner, Embassy Manor owed a general duty of care to patrons invited onto the business's premises to take reasonable precautions to prevent the occurrence of foreseeable harm. *See Steinberg*, 142 A.3d at 754. Kong has sufficiently alleged that Embassy Manor breached that

duty when it failed "to protect [] Kong from physical assault . . . , and allow[ed] or direct[ed] security personnel to use excessive force against him, resulting in physical injuries." (Am. Compl. ¶ 178(g).) The Court finds that Kong's gross negligence claim survives Embassy Manor's Motion to Dismiss.

## IV.    **CONCLUSION**

For the above reasons, RWJ Defendants, Cornick, and Menasha Defendants' Motions to Dismiss are granted. Embassy Manor's Motion to Dismiss is granted in part and denied in part. Plaintiffs' Amended Complaint as it pertains to Liu is dismissed in its entirety without prejudice, and as it pertains to Kong is dismissed without prejudice as to Counts One through Four, Seven, Nine, and Eleven through Thirteen. An appropriate order will follow this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE